UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOTAL INTERMODAL SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>Defendant. | Case No.: CV 17-04908 AB (KSx)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant Travelers Property Casualty Company of America's ("Travelers") Motion for Summary Judgment. Dkt. No. 23. Plaintiff Total Intermodal Services ("Total") filed an opposition and Travelers filed a reply. The Court heard oral argument on July 6, 2018.  For the following reasons, the Court **DENIES** Travelers's Motion for Summary Judgment.

**I.     BACKGROUND**

In this insurance coverage dispute, Total asserts that Travelers wrongly denied a claim for cargo that was lost because instead of delivering it to the customer, Total mistakenly caused it to be sent it back to China where the customer eventually agreed to have it destroyed. Total asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and seeks punitive damages.

1.

Travelers alleges that the loss was not within the scope of the policy's coverage because there was no "direct physical loss or damage" to the cargo while in the coverage territory and because there was no element of fortuity in the destruction of the cargo. Travelers now move for summary judgment on all claims.

## II. UNDISPUTED FACTS

The following facts are undisputed.[1]

On August 26, 2015, Total, a freight forwarder, picked up two containers of specialty printer equipment at the Port of Los Angeles to transport them to the customer, Ricoh Electronics, in Santa Ana, California. (SMF[2] 4.) Unfortunately, Total mistakenly marked one of the containers as "empty" and it was returned to the Hanjin shipping port and shipped back to China. (SMF 4-6.) Chinese customs authorities held the container in Shanghai and it began accruing storage fees. (SMF 7.)

On October 8, 2015, Travelers received a Property Loss Notice from Total explaining that the Ricoh shipment was returned to the Hanjin terminal in error, and on October 14, Total informed Travelers that the container was in China. (SMF 10, 11.) On December 18, 2015, Craig Mitchell of Ricoh sent Travelers and Total a Notice of Intent to claim to the effect that it was holding Total responsible for the lost parts, and that it had to reorder them in order to meet it delivery obligation to a customer. (SMF 15, 16.)

Ricoh and Hanjin tried for months to work with the Chinese customs authorities to have the container released, and Hanjin eventually reported to Ricoh that it was unclear whether the Chinese authorities would ever release the container, and it would continue to accrue fees in the meantime. (SMF 16, 17.) Hanjin suggested that Ricoh consider having the parts destroyed. (SMF 17.) On June 7, 2016, Ricoh decided to

---

[1] Insofar as any of these facts a purported to be disputed, the Court finds that they are not *genuinely* disputed. The Court **OVERRULES** Travelers's objections to any evidence relied upon herein.

[2] "SMF" refers to the parties' combined Statement of Material Facts. Dkt. No. 24-3.

have the cargo destroyed. (SMF 9.) Also during this time, primarily Ricoh, and to a lesser extent Total, were communicating with Travelers about the possibly-lost cargo. Eventually, The parties disagree as to whether Ricoh decided to have the cargo destroyed to avoid incurring further storage fees or, as Total argues, because it became clear it would not be returned and because Travelers assented to it. *See* Pls Resp. to SMF 9.

Total made a claim on its insurance policy with Travelers. Travelers denied the claim.

The Policy includes the following terms:

> **A. COVERAGE**
> We will pay those sums you become legally obligated to pay as damages as a Motor Carrier, Warehouseman, Freight Forwarder, Logistics Service Provider or Other Bailee for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss.
> \* \* \*
> **3. Covered Causes of Loss**
> Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE from an external cause, except for those causes of loss listed in the Exclusions.
> \* \* \*
> **6. Coverage Territory**
> We cover property wherever located within:
> > a. The United States of America and its territories or possessions;
> > b. Puerto Rico; and
> > c. Canada.  (SMF 2, 3.)

Travelers denied Total's claim on the ground that the shipment did not suffer direct physical damage while handled by the insured, and that the loss of the cargo occurred in China outside the coverage area. (SMF 37.)

### III.   LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

3.

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id.* The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmoving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson,* 477 U.S. at 255). Nevertheless, inferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd,* 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## IV. DISCUSSION

Travelers moves for summary judgment on all claims.

### A. The Motion is <u>DENIED</u> as to the Breach of Contract Claim.

Travelers argues that the breach of contract claim fails for two reasons. First, Travelers contends that Ricoh's cargo did not suffer "direct physical loss or damage" within the meaning of the policy, in the covered territory, because the cargo was not physically damaged until it was destroyed by the Chinese authorities in Shanghai. Second, Travelers argues that the loss—the ultimate destruction of the cargo in

China—was not fortuitous, and is therefore uninsurable, because Ricoh made a business decision to have the cargo destroyed.

### 1. Coverage for "Direct Physical Loss Of . . . Covered Property" Does Not Require Damage to the Covered Property.

Total argues that the coverage for "direct physical loss of . . . Covered Property" applies because the property was in effect lost when it was loaded onto the Hanjin ship in Long Beach and was unrecoverable from China. Travelers responds that the "direct physical loss" clause does not cover property that is lost, but property that is physically damaged, and that here, the property was not damaged until it was destroyed at Ricoh's direction, which renders the damage not fortuitous and thus uninsurable. Thus, the parties dispute whether the coverage for "direct physical loss" applies when property is merely lost, or whether it also—or instead—requires that the property be physically damaged.

To resolve this dispute, the Court must interpret the Policy. In *Palmer v. Truck Ins. Exchange*, 21 Cal.4th 1109 (1999), the Court summarized the rules of contract interpretation in the context of insurance contracts:

> " '[I]nterpretation of an insurance policy is a question of law.' [Citation.] 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' [Citation.] Thus, 'the mutual intention of the parties at the time the contract is formed governs interpretation.' [Citation.] If possible, we infer this intent solely from the written provisions of the insurance policy. [Citation.] If the policy language 'is clear and explicit, it governs.' [Citation.] When interpreting a policy provision, we must give its terms their ' "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." ' [Citation.] We must also interpret these terms 'in context' [citation], and give effect 'to every part' of the policy with 'each clause helping to

interpret the other.' [Citations.]"
*Palmer*, 21 Cal.4th at 1115.

The parties' dispute arises out of their focus on different sections of the Policy: Total focuses on the Coverage clause, which establishes coverage for the "*direct physical loss of or damage to* Covered Property caused by or resulting from a Covered Cause of Loss" (emphasis added), whereas Travelers focuses on the definition of Covered Cause of Loss, which is "*risks of direct physical loss or damage from* an external cause" (emphasis added).

Significantly, these sections recite similar phrases (as italicized above), but these phrases are worded slightly differently: the Coverage clause includes the preposition "of" in the phrase "physical loss *of* or damage to," while the Covered Cause of Loss clause omits "of." These clauses serve different functions: the Coverage clause establishes scope of coverage by identifying the kinds of losses covered by the Policy, while the Covered Cause of Loss definition limits the coverage to losses caused by the specified risks. Because this is a dispute about the Policy's coverage, it stands to reason that the Court should first consider the Coverage clause because it establishes coverage.

The Coverage clause provides coverage for the "direct physical loss **of** or damage to Covered Property caused by or resulting from a Covered Cause of Loss" (emphasis added). Thus, the Coverage clause applies to the "loss of" Covered Property. Under an "ordinary and popular meaning," *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal.App.4th 548, 554, *as modified on denial of reh'g* (Jan. 7, 2004), the *"loss of"* property contemplates that the property is misplaced and unrecoverable, without regard to whether it was damaged. Furthermore, to interpret "physical loss of" as requiring "damage to" would render meaningless the "or damage to" portion of the same clause, thereby violating a black-letter canon of contract interpretation—that every word be given a meaning. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if

1 reasonably practicable, each clause helping to interpret the other."); *Lyons v. Fire Ins.*
2 *Exch.*, 161 Cal.App.4th 880, 886 (2008) (insurance policy must be read so "that all
3 words in a contract are to be given meaning").

4 Travelers focuses on the definition of Covered Cause of Loss, which is "risks of
5 direct physical loss or damage from an external cause." Travelers argues that
6 "physical loss or damage" is covered only if the property is physically damaged,
7 implying that property that is merely lost but not damaged is not covered. But this
8 argument is inapt because the Covered Cause of Loss definition does not establish
9 coverage. And at oral argument, Travelers did not explain why it focused on the
10 Covered Cause of Loss definition rather than on the Coverage clause. Furthermore,
11 there is no dispute that the arguable cause of the loss here—a Total employee mis-
12 tagged the shipping container—is a covered cause[3], so the Covered Cause of Loss
13 definition is not germane to this dispute. Instead, as stated above, the Coverage clause
14 establishes the coverage and its plain language covering the "loss of" property is
15 irreconcilable with Travelers's position requiring damage.

16 Travelers points to *MRI Healthcare Center of Glendale, Inc. v. State Farm*
17 *General Ins. Co.*, 187 Cal.App.4th 766 (2010) and *Newman Myers Kreines Gross*
18 *Harris, P.C. v. Great Northern Ins. Co.*, 17 F.Supp.3d 323 (S.D.N.Y. 2014) as holding
19 that "direct physical loss" requires some damage or alteration to the property. In *MRI*,
20 the operative language was "direct physical loss ***to*** business personal property," *MRI*,
21 *supra*, at 711 (emphasis added), and in *Newman*, the operative language was "direct
22 physical loss or damage." *Newman*, *supra*, at 331. But again, those phrases omit the
23 preposition "of" present in the Coverage term here. Thus, contrary to Travelers's
24 argument, *MRI* and *Newman* did not construe the coverage term "physical loss of" that
25 is in issue here. In fact, *MRI* and *Newman* cut against Travelers: because the clauses

---

[3] Travelers's Craig Leinauer testified to the effect that if an employee voluntarily releases the cargo to the wrong party, that is a Covered Cause of Loss. *See* Leinauer Depo. (Pl.'s Ex. 32) 283:24-284:5.

7.

on those cases differ from the Coverage clause here, it stands to reason that they also differ in meaning, such that "direct physical loss *of*" should be construed differently from "direct physical loss *to*" or "direct physical loss." The Court therefore rejects Travelers's proposed construction. Instead, the phrase "loss of" includes the permanent dispossession of something.[4]

### 2. Whether the Loss Occurred in the Coverage Territory and Was Fortuitous Are Triable Issues.

Travelers also argues that the loss occurred in China outside of the coverage territory, and that it was not fortuitous but instead was the result of Ricoh's business decision. Triable issues of fact preclude judgment on these bases.

First, a jury could reasonably find that the loss occurred, for example, once the container was loaded onto the Hanjin ship bound for China, because at that point, it arguably became lost and proved to be unrecoverable. If the jury so concludes, then the loss was also fortuitous because it was caused by the negligence of a Total employee who mistakenly tagged the container "empty."  That Ricoh and Hanjin spent months trying to recover the property and had no way of knowing whether their efforts could be successful also undermines Travelers's argument that Ricoh's decision to destroy it was the cause of the loss and that the loss was not fortuitous. *Accord Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 84 (2d Cir. 2002) (seizure of goods by customs is a fortuitous loss where insured was unable to recover goods, so dispossession from the property was never remedied and resulted in financial loss).

Total also argues that Travelers authorized the destruction, or at least failed to inform Total that destroying it could jeopardize coverage. Having reviewed all of the

---

[4]  The Court recognizes that the same phrase in a different kind of insurance contract could mean something else, and that the issue here is simply whether the phrase "loss of" *includes* physical dispossession in the absence of physical damage. The Court therefore uses the word "includes" to make clear that its construction is non-limiting.

8.

deposition transcripts submitted, the Court does indeed find that these are at least triable issues that foreclose judgment in Travelers's favor. Furthermore, Travelers does not argue that Total and Ricoh did not try hard enough to recover the cargo or wait long enough for some resolution from China. Based on the evidence before the Court, a jury could conclude that the loss occurred in the coverage territory, and that it was fortuitous.

For the foregoing reasons, Travelers's Motion for Summary Judgment on Total's claim for breach of contract is **DENIED**.

### B. The Motion is <u>DENIED</u> as to the Breach of the Covenant Claim and the Claim for Punitive Damages.

Travelers argues that the breach of the covenant claim fails because (1) there is no breach of contract, and (2) there was a genuine dispute about coverage.

As noted above, whether Travelers breached the insurance contract is at least a triable issue. The Court also finds that Travelers's reliance on the "genuine dispute" doctrine is misplaced.

The covenant of good faith and fair dealing is implied in law to assure that a contracting party "refrain[s] from doing anything to injure the right of the other to receive the benefits of the agreement." *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1153 (1990). In the insurance context, "[A]n erroneous interpretation of an insurance contract by an insurer does not necessarily make the insurer liable in tort for violating the covenant of good faith and fair dealing; to be liable in tort, the insurer's conduct must also have been unreasonable." *Brandt v. Superior Court*, 37 Cal.3d 813, 819 (1985).

Here, Travelers argues that its interpretation of the Policy is at least subject to a genuine dispute, so it is shielded from tort liability. But in all of the cases Travelers cites, the genuine dispute was grounded in some bona fide uncertainty about controlling case law, such as in *Opsal v. United Servs. Auto. Assn.*, 2 Cal.App.4th 1197, 1206 (1991), where the insurer's denial was based on certain dicta in a Supreme

9.

Court case. Although the genuine dispute doctrine may be broader than this, Travelers argues only that certain cases support its interpretation of the Coverage clause. But as discussed above, the cases Travelers's relies on do not in fact construe the same coverage language, so those cases could not logically govern construction of the Policy—either now during litigation, or when Travelers was evaluating Total's claim. Thus, Travelers's genuine dispute argument, like its breach of contract argument, is inapt because it does not address the actual Coverage language in issue.

Ultimately, "[t]he genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process, and evaluate the insured's claim. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 723 (2007). Travelers dealt with its claimed uncertainly over the plain meaning of the non-technical phrase "loss of" by, in effect, reading it out of the contract. This is inconsistent with ordinary principles of contract interpretation that Travelers's claim adjusters must be familiar with. Indeed, the interpretation Travelers applied at the time it denied Total's claim is inconsistent with the interpretations offered by Travelers's own employees at deposition: that there could be a physical loss without the property being damaged, and that "loss" simply means permanent dispossession. *See, e.g.*, Hermann Depo. (Pl.'s Ex. 31) 250:5-18; Leinauer Depo. (Pl.'s Ex. 32) 279:1-280:2. The contrast between how Travelers construed the Policy when it was evaluating Total's claim and how its employees construed it at deposition is striking and unexplained, and raises a triable issue as to whether Travelers acted reasonably in denying the claim based on its erroneous construction of the Policy. In light of the forgoing, "viewing the facts in the light most favorable to [Total], a jury could conclude that [Travelers] acted unreasonably." *Wilson, supra,* at 724.

Nor has Travelers established that it is entitled to summary adjudication of Total's claim for punitive damages. To recover punitive damages, a plaintiff must establish by clear and convincing evidence that the defendant "has been guilty of

oppression, fraud, or malice." Cal. Civ. Code § 3294. The Court again finds that a jury could find this standard met by Travelers's apparent decision that the Policy's coverage for "loss of or damage to" covered only "damage to" despite its employees' current testimony to the contrary.[5]

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Travelers's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: July 11, 2018

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

---

[5] The Court declines to rule at this juncture on Travelers's argument that Total cannot pursue its bad faith and punitive damages claims based on other aspects of Travelers's claim handling and not merely on Travelers's interpretation of the Policy. Given the posture of how this issue arose, the briefing on it was incomplete. If Travelers wishes to pursue is argument, it may do so through an appropriate pre-trial motion in limine.